UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEREMY DELPHIN,

          Plaintiff,

    v.

EDWARDS ET AL.,

          Defendants.

No.  2:23-cv-00493 DC SCR P

ORDER AND

FINDINGS & RECOMMENDATIONS

**SUMMARY OF DECISION**

Plaintiff is incarcerated in state prison and proceeding pro se and in forma pauperis with this civil rights action under 42 U.S.C. § 1983.  Defendants A. Edwards, A. Moore, M. Campos, and N. Georgiou, the only remaining defendants, have filed a motion for summary judgment. ECF No. 55.  For the reasons set forth below, the undersigned recommends the motion be granted.

**PROCEDURAL BACKGROUND**

This action is proceeding on plaintiff's First Amended Complaint ("FAC"), filed on May 18, 2023.  ECF No. 14.  The FAC alleged Eighth Amendment excessive force violations by defendants arising out of incidents occurring on various dates while plaintiff was incarcerated at California State Prison, Sacramento ("CSP-SAC").  Id.  Plaintiff alleged that defendant Edwards assaulted him on January 18, 2021, defendant Moore assaulted him on January 21, 2021, and

1

defendant Campos assaulted him on January 10, 11, 17, and 21, 2021, as well as on December 15, 2022 and January 19, 2023.[1]  ECF No. 14 at 4; Def. MSJ, Exhibit A ("Plaintiff Depo.") at 41:10-16, 41:22-42:5, 24:11, 47:8-25; ECF No. 55-1 (Defendants' Statement of Undisputed Material Facts ("SUMF")) 32.  Plaintiff also alleged that defendant Georgiou shot him in the head with a projectile weapon on May 18, 2021.  ECF No. 14 at 4; SUMF 25.

The previously assigned magistrate screened the FAC under 28 U.S.C. § 1915A and determined it stated cognizable excessive force claims against defendants Edwards, Moore, Campos, and Georgiou.  ECF No. 19.  After withdrawing his decision to amend the FAC, plaintiff elected to proceed on the FAC as screened.  ECF No. 35.

<strong>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</strong>

**I.      Parties' Filings**

**A.  Defendants' Motion**

Defendants move for summary judgement on plaintiff's excessive force claims on three grounds: (1) plaintiff has not credibly identified defendants Edwards, Moore, and Campos as the individuals who assaulted him; (2) plaintiff was not shot by defendant Georgiou; and (3) in the alternative, defendants are entitled to qualified immunity.

<strong>B.  Plaintiff's Opposition & Defendants' Reply</strong>

Plaintiff filed a timely opposition to defendants' motion.  ECF No. 60.  Plaintiff did not dispute any of defendants' facts set forth in their SUMF, as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 260(b).  Nor did plaintiff submit any evidence in opposition to defendants' motion.  Instead, plaintiff explained that there is evidence to support his claims, that only defendants have access to it, and that the evidence provided by defendants is misleading.  Id. at 2-3.  Plaintiff stated that neither of the cells shown in the Audio Visual Surveillance System ("AVSS") footage provided by defendants are his cell and that the provided footage does not encompass the timeframe during which the alleged assaults occurred.  Id. at 1.  Plaintiff further asserts that the footage was tampered with.  Id. at 1-2.  Plaintiff urges the Court to compel

---

[1]  These alleged dates will be referred to as the "Incident Dates" for clarity and conciseness.

production of the "real" surveillance footage of A-Yard Building 5 on January 9, 10, 11, 17, and 18, 2021, between 11:00pm and 6:00am; footage of A-Yard Building 5 on January 21, 2021, between 9:00am and 2:00pm; footage of B-Yard Building 5 or Building 8 on May 17 and 21, 2021, between 11:00pm and 6:00am; and footage of "B-Yard Building 8 or B-5 or wherever Plaintiff is at in [CSP-SAC]" on May17, 2022 and November 20, 2022, between 11:00pm and 6:00am. Id. at 2-3.

Defendants filed a reply (ECF No. 61) to plaintiff's opposition. In their reply, defendants argued that they are entitled to summary judgment because they have produced undisputed competent evidence that the assault incidents on each of the dates alleged did not occur. ECF No. 61 at 1. Defendants also argued that they should be granted summary judgment because plaintiff's opposition did not comply with Local Rule 260, namely that plaintiff did not admit or deny any of the facts laid out in their SUMF and failed to submit his own evidence in opposition to the motion. Id. at 3. Defendants further argued that plaintiff failed to produce admissible evidence that created a genuine issue of material fact. Id. at 4.

While defendants are correct in that plaintiff's opposition does not comply with standard summary judgment requirements or local rules, "[c]ourts should avoid applying summary judgment rules strictly to pro se inmates." Sawyer v. MacDonald, 768 Fed. App'x 669, 671 (9th Cir. 2019) (quoting Soto v. Sweetman, 882 F.3d 865, 872 (9th Cir. 2018)). However, plaintiff's opposition, while verified, only consists of various unfounded arguments, new allegations, and a request for additional discovery. Accordingly, it does not raise any triable issues. F.T.C. v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) (holding that affidavits that are unsupported by specific facts cannot create a genuine issue of material fact).

Nonetheless, because plaintiff is pro se, the undersigned will consider the entire record before granting summary judgment against him. See Adv. Comm. Note to 2010 Amendments to Fed. R. Civ. P. 56(e)(4) ("[T]he court may seek to reassure itself by some examination of the record before granting summary judgment against a pro se litigant."). The court will consider whether plaintiff's FAC, other verified filings, and deposition can serve as opposing affidavits:

> [B]ecause [the plaintiff] is pro se, we must consider as evidence in his opposition to summary judgment all of [his] contentions offered in motions and pleadings where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct.

Jonas v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); see also Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003) (reversing grant of summary judgment to defendants where district court failed to credit genuine issues of material fact raised in plaintiff's deposition testimony).

## II.    Material Facts

Plaintiff Jeremy Delphin was incarcerated at CSP-SAC from February 20, 2020 through June 25, 2021, and from July 8, 2022 through March 16, 2023.  SUMF 1.  Plaintiff brings Eighth Amendment excessive force claims against defendants Edwards, Moore, Campos, and Georgiou.  SUMF 2.  From January 10, 2021 to January 21, 2021, plaintiff was housed at Facility A, Building 5, Cell 205, without a cellmate.  SUMF 4.

### A.  January 10, 2021

Plaintiff reported that on January 10, 2021, unidentified staff entered his cell and woke him by battering him.  SUMF 5.  Plaintiff stated that he felt someone punch him in the testicles, yank his penis and testicles multiple times, and punch him in the head four times until he fell unconscious.  Id.  Plaintiff heard someone say his "request for a settlement was too much."  Id.  Plaintiff states that at the time of the incident, his cell was pitch black and he could not see anything; however, plaintiff states that the voices of his assailants were male.  Id.  At deposition, plaintiff claimed he heard defendant Campos' voice, who is a female correctional officer.  Id.  Defendant Campos declares that she was not present at CSP-SAC on January 10, 2021.  SUMF 6.  Upon reviewing the AVSS footage of Facility A, Building 5, A Section, Cell 205 on January 10, 2021, between 11:00pm to 6:00am, Lieutenant Fraker concluded that plaintiff's cell door was not opened at any time.  SUMF 7.  Lieutenant Fraker also concluded that the video did not appear to have been altered, modified, or manipulated.  Id.

### B.  January 11, 2021

Plaintiff reported that on January 11, 2021, between 12:00am and 6:00am, at least two

unidentified staff entered his cell and assaulted him in the same manner as on January 10, 2021. SUMF 8.  Plaintiff stated that it was too dark in his cell to see anyone; however, he identified his assailants' voices as male.  Id.  At deposition, plaintiff claimed defendant Campos and an unknown male assaulted him and that the male raped him.  Id.  Defendant Campos declares that she was not present at CSP-SAC on January 11, 2021.  SUMF 9.  Upon reviewing the AVSS footage of Facility A, Building 5, A Section, Cell 205 on January 11, 2021, between 12:00am to 6:00am, Lieutenant Fraker concluded that plaintiff's cell door was not opened at any time. SUMF 10.  Lieutenant Fraker also concluded that the video did not appear to have been altered, modified, or manipulated.  Id.

### C.  January 12, 2021

Plaintiff reported that on January 12, 2021, between 12:00am and 6:00am, he was hit in the head and knocked unconscious by unidentified assailants.  SUMF 11.  Plaintiff was unable to see who or how many people had entered his cell and has not since identified the persons who entered his cell on January 12, 2021.  Id.  Defendant Campos declared that she was not present at CSP-SAC on January 12, 2021.  SUMF 12.  Upon reviewing the AVSS footage of Facility A, Building 5, A Section, Cell 205 on January 12, 2021, between 12:00pm to 6:00am, Lieutenant Fraker concluded that plaintiff's cell door was not opened at any time.  SUMF 13.  Lieutenant Fraker also concluded that the video did not appear to have been altered, modified, or manipulated.  Id.

### D.  January 17, 2021

Plaintiff reported that on January 17, 2021, between 12:00am and 6:00am, unidentified staff entered his cell and assaulted him in the same manner as on January 10, 2021.  SUMF 14. Plaintiff was unable to see who or how many people entered his cell, but he heard someone state, "What you're asking for is too much."  Id.  At deposition, plaintiff admitted that he could not identify the persons who allegedly assaulted him on January 17, 2021.  SUMF 15.  Upon reviewing the AVSS footage of Facility A, Building 5, A Section, Cell 205 on January 17, 2021, between 12:00am to 6:00am, Lieutenant Fraker concluded that plaintiff's cell door was not opened at any time.  SUMF 16.  Lieutenant Fraker also concluded that the video did not appear to

5

have been altered, modified, or manipulated.  Id.

### E.  January 18, 2021

Plaintiff reported that on January 18, 2021, between 3:00am and 6:00am, unidentified staff entered his cell and assaulted him in the same manner as on January 10, 2021.  SUMF 17. Plaintiff was unable to see who or how many people entered his cell, nor did he hear them say anything.  Id.  At deposition, plaintiff claimed defendant Edwards struck him, identifying him by his voice.  Id.  Plaintiff claimed that defendant Edwards told plaintiff he was asking for too much in the lawsuit.  Id.  Upon reviewing the AVSS footage of Facility A, Building 5, A Section, Cell 205 on January 18, 2021, between 3:00am to 6:00am, Lieutenant Fraker concluded that plaintiff's cell door was not opened at any time.  SUMF 18.  Lieutenant Fraker also concluded that the video did not appear to have been altered, modified, or manipulated.  Id.

### F.  January 21, 2021

Plaintiff reported that on January 21, 2021, between 9:00am and 2:00pm, unidentified staff entered his cell and assaulted him in the same manner as on January 10, 2021.  SUMF 20. Plaintiff heard an unidentified staff member state, "it's too much what you're asking for.  Id. Plaintiff had a shirt wrapped around his head while sleeping, so he could not see anything during the physical altercation.  Id.  However, plaintiff heard at least two people run out of his cell and identified at least one of his assailants' voices as male.  Id.  At deposition, plaintiff identified defendants Moore and Campos as the staff that entered his cell and punched him.  Id.  Plaintiff also claimed that he heard defendant Campos say that he was asking for too much in the lawsuit. Id.  Upon reviewing the AVSS footage of Facility A, Building 5, A Section, Cell 205 on January 21, 2021, between 9:00am to 2:00pm, Lieutenant Fraker concluded that plaintiff's cell door was not opened at any time.  SUMF 21.  Lieutenant Fraker also concluded that the video did not appear to have been altered, modified, or manipulated.  Id.

On January 21, 2021, defendant Campos worked as the control booth officer from 6:00am to 2:00pm at Facility C, Building 5.  SUMF 22.  Defendant Campos did not leave her post in Facility C on January 21, 2021 and was never in Facility A on that day.  Id.  On January 21, 2021, defendant Moore worked as a floor officer at Facility A, Building 5.  SUMF 23.  From 6:00am to

10:00am, defendant Moore performed "Guard1" electronic welfare checks of inmates. Id. From 10:00am to 2:00pm, defendant Moore conducted maintenance and control of all activities and movement within the Housing Unit, making periodic searches of areas accessible to inmates for contraband, distributing meals to cells, maintaining an accurate count of inmates, applying restraining devices when needed, intervening in physical altercations between inmates, and conducting security checks of doors and windows. Id. The only way defendant Moore could have entered plaintiff's cell was to request the control booth officer to open the cell door or for defendant Moore to request an override key from the control booth officer. SUMF 24. Defendant Moore did not request the control booth officer to open plaintiff's cell, did not request the override key, and did not enter plaintiff's cell to assault him. Id.

### G. May 18, 2021

Plaintiff alleged that on May 18, 2021, defendant Georgiou used excessive force when he shot plaintiff in the head with a projectile weapon during an inmate attack on plaintiff. SUMF 25. Plaintiff also alleged that defendant Georgiou instigated the attack on plaintiff and made retaliatory comments regarding plaintiff filing grievances. Id. Defendant Georgiou was working as the control booth operator at Facility A, Building 7 when he observed inmates attacking plaintiff. SUMF 27. Defendant Georgiou did not use any force to stop the attack. Id. Defendant Georgiou did not instigate the attackers. SUMF 28. Nor did he say to plaintiff, "I got your deliberate indifference right here," or "I won't shoot my friends, just you and the lawsuit, you are asking too much." Id. Plaintiff was not shot in the head on May 18, 2021; he only sustained slash injuries from the inmate attack. SUMF 29.

### H. December 15, 2022 & January 19, 2023

In December 2022 and January 2023, plaintiff was housed at CSP-SAC in Facility B, Building 8, Cell 217, without a cellmate. SUMF 31. Plaintiff reported that an unknown male correctional officer came into his cell and assaulted him in the same manner as on January 10, 2021. SUMF 32. Plaintiff could not provide any identifying factors for the person who assaulted him. Id. Plaintiff claimed that defendant Campos stood by and watched this occur, but later changed his statement to allege that defendant Campos was the individual who assaulted him,

7

identifying her by her voice.  Id.  Plaintiff claimed that he was knocked unconscious, but he could not identify who hit him because it was dark in his cell.  Id.  Plaintiff had difficulty identifying the dates and timeframes that the physical altercations occurred, but ultimately stated that they occurred on December 15, 2022 and January 19, 2023.  Id.  Upon reviewing the AVSS footage of Facility B, Building 8, Cell 219 on December 15, 2022 and January 19, 2023, between 10:00pm and 6:00pm, Sergeant Granfield concluded that plaintiff's door was not opened at any time.  SUMF 33.  Sergeant Granfield also concluded that the video did not appear to have been altered, modified, or manipulated.  Id.  Defendant Campos declared that she was not present at CSP-SAC on December 15, 2022 or January 19, 2023.  SUMF 34.

## LEGAL STANDARDS

### I.    Summary Judgment

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Adv. Comm. Note to 1963 Amendments to Fed. R. Civ. P. 56(e)).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

(9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

**II.      Section 1983 Causation**

To satisfy the causation requirement of section 1983, "the plaintiff must establish both causation-in-fact and proximate causation."  Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008) (citations omitted).  To establish that a defendant's misconduct is the "cause-in-fact" of an alleged injury, the plaintiff must show that the "injury would not have occurred in the absence of the conduct."  Spencer v. Peters, 857 F.3d 789, 798 (9th Cir. 2017).  To establish that the misconduct is the "proximate cause" of an injury, the plaintiff must show that "the injury is of a type that a reasonable person would see as a likely result of the conduct in question."  Id. (citation omitted); see also Arnold v. Int'l Bus. Machines Corp., 637 F.2d 1350, 1355 (9th Cir. 1981) (causation definition in Johnson v. Duffy, 588 F.2d 740 (9th Cir. 1978), "closely resembles the standard 'foreseeability' formulation of proximate cause") (citations omitted).  "Like in any proximate cause analysis, an intervening event may break the chain of causation between the allegedly wrongful act and the plaintiff's injury."  Caldwell v. City & Cty. of San Francisco, 889 F.3d 1105, 1115 (9th Cir. 2018).  "Additionally, a defendant's conduct cannot be considered the proximate cause of the plaintiff's injury if the connection between the constitutional violation and the injury is too remote."  Cox v. United States, No. 8:16-cv-1222-CJC-KES, 2019 WL 297982, at *10 (C.D. Cal. 2019) (citing Martinez v. State of Cal., 444 U.S. 277, 285 (1980)).

**III.      Eighth Amendment Excessive Force**

The Eighth Amendment prohibits prison officials from inflicting cruel and unusual punishment on inmates which has been defined as "the unnecessary and wanton infliction of pain."  Whitley v. Albers, 475 U.S. 312, 319 (1986).  "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is… whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillan, 503 U.S. 1, 7

10

(1992).  The court's inquiry into an excessive force claim focuses on the extent of the prisoner's injury, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.  Hudson, 503 U.S. at 7 (quotation marks and citations omitted).  While the absence of a serious injury is relevant to the Eighth Amendment inquiry, it does not end it.  Id.  The malicious and sadistic use of force to cause harm always violates contemporary standards of decency in violation of the Eighth Amendment.  Whitley, 475 U.S. at 327.

## DISCUSSION

### I.    Plaintiff's Ex Parte Application to Reopen Discovery

Plaintiff filed an ex parte application to reopen discovery (ECF No. 62) on July 7, 2025.  In his application, plaintiff requested a 30-day extension to submit evidence because an unnamed correction officer refused to make copies of an unidentified piece of evidence.  ECF No. 62 at 1.  Additionally, he stated that he "still has not got a e-discovery entered by CDCR" and that the "only thing entered is a cell pictured that is not plaintiff" and "hospital records that is [*sic*] not plaintiff [*sic*]."  Id.  Although included in his opposition and not the instant application, plaintiff also appears to request the "real" surveillance footage of the alleged assault dates and "real" hospital records.  ECF No. 60 at 3.

The undersigned construes plaintiff's request as one to defer consideration of the motion for summary judgment and to allow plaintiff to obtain discovery pursuant to Federal Rule of Civil Procedure 56(d).  "Rule 56(d) provides, 'If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declaration or take discovery; or (3) issue any other appropriate order.'"  Palmer v. Woodford, No. 1:06-cv-00512-LJO-BA, 2014 WL 3778266, at *2 (E.D. Cal. July 31, 2014) (expounding Federal Rule of Civil Procedure 56(d)).

The undersigned finds that plaintiff has not made the requisite showing to warrant additional discovery.  Although plaintiff complains that an unnamed correctional officer refused

11

to make copies of his evidence, he does not explain why such refusal rendered plaintiff unable to file the original copy he did have.  In addition, plaintiff complains that the evidence defendants produced was tampered with.  However, plaintiff does not explain why he was unable to serve defendants with a request for production of the evidence he now demands while discovery was open.  Even assuming plaintiff did so, "if [he] was dissatisfied with Defendants' response, or if Defendants failed to respond, Plaintiff's recourse was to file a motion to compel on or before [December 20, 2024], [(ECF No. 51)], which he failed to do."  Palmer, 2014 WL 3778266, at *2.  "Plaintiff does not explain why he delayed nearly [six] additional months before filing the instant motion seeking discovery."  Id.  Accordingly, the Court will deny Plaintiff's Rule 56(d) motion.

**II.     Disposition of Plaintiff's Opposition as Evidence Supporting Triable Issue**

While plaintiff's opposition serves as a verified filing for purposes of opposing summary judgment, it does not include any assertions, supported by specific facts, that would allow the undersigned to reasonably infer that a genuine dispute of material fact exists.

First, plaintiff improperly uses his opposition as an opportunity to accuse defendants of tampering with evidence.  ECF No. 60 at 1-2.  However, merely attacking the credibility of defendants' evidence is not sufficient to defeat a motion for summary judgment.  Castle v. Hedgpeth, No. 1:08-cv-01754-AWI-SM, 2011 WL 3207774, at *7 (E.D. Cal. July 27, 2011) (holding that "Plaintiff [could not] defeat a motion for summary judgment by questioning the credibility of the moving parties [*sic*] evidence") (citing Anderson, 477 U.S. at 256; Nat'l Union Fire Ins., Co v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir. 1983) (holding that "neither a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment); Kidd v. Dep't of Interior, 19 F.3d 1440 at *2 (9th Cir. 1994) ("[A] nonmoving party may not defeat a motion for summary judgment merely by attacking the credibility of the affidavits submitted by the moving party.").  Moreover, while the evidence of the nonmoving party is to be believed, only *justifiable* inferences are to be drawn in its favor.  Anderson, 477 U.S. at 255 (emphasis added).  Inferences are not to be "drawn out of the air," and plaintiff fails to produce a "factual predicate from which the inference [that defendants' footage was tampered with] may reasonably be drawn."  Richards, 602 F.Supp. at 1244.

Plaintiff also requests footage from May 17, 2022 and November 20, 2022, neither of which were mentioned in plaintiff's FAC.  ECF No. 60 at 3.  Plaintiff does not explain what happened on the newly added dates of May 17, 2022 and November 20, 2022 or how they are relevant to the incidents in question.  Moreover, whatever transpired on the new dates is unpled, and thus, is not properly before the Court.  This request also does not raise a triable issue of fact, as "it is well settled that a party cannot avoid summary judgment by alleging facts in an opposition that were not alleged in the pleadings." Bankston v. Americredit Fin. Servs., Inc., No. C 09-04892 SBA, 2011 WL 89730, at *7 (N.D. Cal. Jan. 10, 2011) (citing Pickern v. Pier 1 Imps. (U.S.), Inc, 457 F.3d 963, 968-69 (9th Cir. 2006) (refusing to allow plaintiff to assert new specific factual allegations in support of a claim when they were presented for the first time in the plaintiff's opposition to summary judgment); Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.").

Finally, plaintiff states that he is of "white complexion," is of blood type AB, and does not have any virus or disease." ECF No. 60 at 2.  These statements do not create a dispute of fact, as defendants do not rely upon plaintiff's physical appearance or characteristics in support of their summary judgment motion.  Nor is plaintiff's evidence of his appearance and characteristics probative of any element of an excessive force claim.  See Richards, 810 F.2d at 902 (establishing that the party opposing summary judgment must present "significant probative evidence" to support its claim or defense).  For these reasons, the undersigned finds that plaintiff's opposition fails to raise a triable issue of fact.

### III.   Causation and the Alleged Cell Assaults

The undersigned finds that plaintiff has not established a genuine dispute of fact as to whether defendants Edwards, Moore, and Campos were, in fact, the individuals that entered his cell and assaulted him on the days alleged in the FAC.  Defendants argue neither defendant Edwards, Moore, or Campos "entered plaintiff's cell, threatened him, or assaulted him on the dates in question."  ECF No. 55 at 18.  Defendants submit various pieces of evidence in support

////

of each defendant's motion for summary judgment.  The undersigned addresses each defendant in turn below.

### A.  Whether Defendant Edwards Was the Individual Who Assaulted Him on January 18, 2021

Defendant Edwards stated in a sworn declaration that he did not enter plaintiff's cell on either January 17 or 18, 2021.  ECF No. 55-10 ("Edwards Decl.") at 2.  He declared that he was not present at CSP-SAC on January 17th, and on January 18th, he was not assigned to Facility A, Building 5 (plaintiff's housing area) until 6:00am to 2:00pm, which is outside of the timeframe plaintiff alleges the incident occurred.  Id. at 2.  In addition, defendant Edwards declared that he does not recall seeing or interacting with plaintiff on January 18, 2021.  Id.  In support, Litigation Coordinator ("LC") Price stated in a sworn declaration that he checked the Workforce Telestaff Roster Report ("Staff Report") and verified that defendant Edwards was not working on January 17, 2021, and was only working "second watch" from 6:00 am to 2:00 pm on January 18, 2021.  ECF No. 55-12 ("Price Decl.") at 2-3 ¶ 7.  Also in support, Lieutenant Fraker stated in a sworn declaration that he reviewed the AVSS footage from January 17, 2021 between 12:00 am and 6:00 am, as well as from January 18, 2021 between 3:00 am and 6:00 am, and confirmed that plaintiff's cell door was not opened at all.  ECF No. 55-9 ("Fraker Decl.") at 3,4 ¶¶ 11, 12.  These assertions are sufficient to show that plaintiff has not "connect[ed] … [defendant Edwards] to the incident giving rise to liability;" therefore, defendants have met their initial burden.  Paine v. City of Lompoc, 265 F.3d 975, 984 (9th Cir. 2001).

The burden then shifts to plaintiff, who must demonstrate that he has "alleged facts that show that [defendant Edwards] was personally involved in the deprivation of his [Eighth Amendment] rights."  Jenkins v. Caplan, No. C 02-5603 RMW (PR), 2012 WL 12904629, at *10 (N.D. Cal. Mar. 30, 2012) , aff'd, 548 F. App'x 505 (9th Cir. 2013) (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).  Because the undersigned reviews the record as a whole to determine if plaintiff has established a genuine dispute of fact, plaintiff's original complaint,[2] the

---

[2]  For the purposes of screening and determining whether a claim for relief has been adequately stated, an original complaint is superseded by the amended complaint.  Loux v. Rhay, 375 F.2d

14

FAC, and his deposition are considered in addition to his opposition.

Plaintiff alleges that defendant Edwards punched him in the head so hard that he lost consciousness.  ECF No. 1 (plaintiff's original complaint") at 13; ECF No. 14 at 4.  Plaintiff also describes defendant Edwards' physical appearance in detail.  ECF No. 14 at 4 ("Defendant Edwards is around 6 foot[,] 220 lbs, short hair, no facial hair, white male, wears glasses, light brown hair").  At deposition, plaintiff stated that he identified defendant Edwards by his voice.  Plaintiff Depo. at 45: 8-12.  Plaintiff's detailed description of defendant Edwards in his FAC provides a factual basis for the inference that he would have been able to identify defendant Edwards by his physical appearance.  However, plaintiff does claim to have done so.  Instead, he argues that he identified defendant Edwards by his voice but fails to establish any factual predicate from which the inference that plaintiff could, and did, in fact, recognize defendant Edwards' voice, as he claims to have done, may be reasonably drawn.  Richards, 602 F. Supp. at 1244.  "Voice identification may be established by either [circumstantial or direct] evidence," and "once a prima facie case of voice authorship is established, the identity of the particular speaker is an issue of fact[.]"  United States v. Turner, 528 F.2d 143, 163 (9th Cir. 1975).  "[Identification of voices from audio tapes] is permissible when … a basis on which to make a reasonably accurate identification is shown."  Id.  In other words, the question is whether plaintiff "had a substantial basis on which to express an opinion of the authorship of the … [voice]."  Id.[3]  Plaintiff does not indicate that he has conversed with defendant Edwards in the past or had any interaction with defendant Edwards from which he may have learned what defendant Edwards' voice sounded like.  Without more, plaintiff's argument that he knew it was defendant Edwards "because [he]

55, 57 (9th Cir. 1967) (citations omitted), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012).  However, for the purpose of summary judgment, "a *verified complaint* may be treated as an affidavit to oppose summary judgment to the extent that it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'"  Keenan v. Hall, 83 F.3d 1083 n.1 (9th Cir. 1996) (emphasis added) (quoting McElyea v. Babbitt, 833 F.2d 196, 197-98 & n.1 (9th Cir. 1987).

[3]  Plaintiff claims that he identified defendant Edwards' voice while his cell was dark and he "was unable to see who or how many people entered his cell."  SUF No. 17.  Plaintiff's identification method relies on sound of voice alone, just as identification of a voice by listening to an audio recording does.  Accordingly, the undersigned finds that the situations are sufficiently similar to reason by analogy.

heard his voice," Plaintiff Depo. at 45:18-22, does not make out a prima facie case of voice authorship, which is necessary to raise a triable issue on the matter.

Examining the record as a whole, the undersigned finds that plaintiff has not raised a triable issue of fact as to whether defendant Edwards was the individual who entered his cell and assaulted him on January 18, 2021. Plaintiff's Original Complaint, FAC, and deposition fail to set forth specific facts that support his contentions, and he has not submitted any other evidence[4] that otherwise disrupts defendants' account of undisputed facts. Accordingly, the undersigned recommends summary judgment be granted as to defendant Edwards.

**B. Whether Defendant Moore Was the Individual Who Assaulted Him on January 21, 2021**

Defendant Moore stated in a sworn declaration that on January 21, 2021, from 6:00 am to 2:00 pm, he was working as a floor officer on Facility A, Building 5, but he did not enter plaintiff's cell or assault him. ECF No. 55- 5 (Moore Decl.) at 2 ¶3, 5. Defendant Moore also declared that the only way he could have entered plaintiff's cell was by requesting the control booth officer open the cell door or requesting an override key, and he did not do either. Id. ¶ 5. In support, Sergeant Buckley, defendant Moore's partner, stated in a sworn declaration that he did not observe the control booth officer open plaintiff's cell or defendant Moore request an override key to open plaintiff's door between 9:30 am and 1:30 pm on January 21. ECF No. 55-8 ("Buckley Decl.") at ¶ 5. Also in support, Lieutenant Fraker stated in a sworn declaration that he reviewed the AVSS footage from January 21, 2021, between 9:00 am and 2:00 pm, and confirmed that no one entered plaintiff's cell. Fraker Decl. ¶11, 12. These assertions are sufficient to show that plaintiff has not "connect[ed] … [defendant Moore] to the incident giving

---

[4] Plaintiff had a fair opportunity to participate in discovery and submit evidence to the Court both in support of his FAC and in opposition to defendants' Motion for Summary Judgment. Defendants provided a *Rand* warning explaining plaintiff's obligations in opposing a motion for summary judgment, as well as the consequences of failure to comply. Moreover, plaintiff does not claim lack of notice or ignorance of what a motion for summary judgment entails. Nonetheless, plaintiff fails to produce so much as a copy of a filed grievance or a medical report verifying his injuries. He also does not allege in either his FAC or state in his deposition that he received medical care at all for the concussions, battering of his genitals, and sexual assault he allegedly suffered on multiple occasions, many of the alleged incidents occurring consecutively.

16

rise to liability;" therefore, defendants have met their initial burden. Paine, 265 F.3d at 984.

The burden then shifts to plaintiff, who must demonstrate that he has "alleged facts that show that [defendant Moore] was personally involved in the deprivation of his [Eighth Amendment] rights." Jenkins, 2012 WL 12904629, at *10. Plaintiff alleges that defendant Moore punched him in the head so hard that he lost consciousness. ECF No. 1 at 13; ECF No. 14 at 4. Plaintiff also describes defendant Moore's physical appearance in detail. ECF No. 14 at 4. ("Defendant Moore is around 5'9", 185 lbs, short light brown hair, white male, no facial hair"); Plaintiff Depo. at 48:5-8 ("Officer Moore looks like, white, baldheaded dude. I want to say blue or green eyes, maybe light brown, no facial hair, and probably five ten."). At deposition, plaintiff confirmed defendant Moore as his assailant and that the incident occurred on January 21, 2021 between 9:00 am and 2:00 pm. Plaintiff Depo. at 47:8-16. However, plaintiff does not provide any specific facts to support his conclusion that defendant Moore was, in fact, the individual that assaulted him. Although plaintiff lays sufficient foundation for the inference that he is able to visually identify defendant Moore, he does not claim to have done so on this occasion. Nor could he, for it is undisputed that plaintiff "was unable to see anything due to having wrapped a shirt around his head to block light so he could sleep." SUMF 20; Fraker Decl. ¶ 9. Without more, plaintiff's contention that defendant Moore was his assailant is nothing more than an unsubstantiated conclusion, and "the court need not accept legal conclusions 'cast in the form of factual allegations.'" Sneed v. Lira, No. 09-CV-2853 W MDD, 2011 WL 6998202, at *3 (S.D. Cal. Nov. 3, 2011) (quoting Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981), report and recommendation adopted, No. 09-CV-2853 W MDD, 2012 WL 90430 (S.D. Cal. Jan. 11, 2012).

Examining the record as a whole, the undersigned finds that plaintiff has not raised a triable issue of fact as to whether defendant Moore was the individual who entered his cell and assaulted him on January 21, 2021. Accordingly, the undersigned recommends summary judgment be granted as to defendant Moore on plaintiff's excessive force claim.

////

////

17

**C. Whether Defendant Campos Was the Individual Who Assaulted Him on the Incident Days**

Defendant Campos stated in a sworn declaration that she was not assigned to work and did not go to CSP-SAC at any time on January 10, 11, or 12, 2021. ECF No. 55-13 ("Campos Decl.") at 2 ¶¶ 3-5. She stated that on January 21, 2021, she worked as the control booth officer during second watch, from 6:00 am to 2:00 pm, at Facility C, Building 5, and third watch, from 2:00 pm to 10:00 pm at Facility C. Id. ¶ 6. At no time did she leave her post at Facility C, nor did she come into contact with plaintiff. Id. Defendant Campos further stated that on December 15, 2022, she switched her scheduled shift and did not go to CSP-SAC. Id. ¶ 7. She did not go to CSP-SAC on January 19, 2023 either, as she was on extended leave from the end of December 2022 to April 2023. Id. ¶ 7-8. In support, LC Price stated in a sworn declaration that he reviewed the Staff Report and confirmed that defendant Campos did not work on January 10, 11, or 12, 2021, and on January 21, 2021, she worked second watch, from 6:00 am to 2:00 pm, at Facility C, Building 5, and third watch, from 2:00 pm to 10:00 pm, at Facility C, Building 6. Price Decl. ¶ 6. Also in support, Lieutenant Gonzales stated in a sworn declaration that on January 21, defendant Campos was working second watch at Facility C, Housing Unit 5 from 6:00am to 2:00pm. ECF No. 55-14 ("Gonzales Decl.") at ¶ 4. Lieutenant Gonzales also stated that defendant Campos cannot leave her post without his permission, and she remained at her post throughout her shift. Id. In addition, defendant Moore stated in a sworn declaration that he did not work with defendant Campos on January 21 and does not recall seeing her at any time during his second watch shift. Moore Decl. at ¶ 6. Lieutenant Fraker also stated in a sworn declaration that he reviewed the AVSS footage from January 10, 2021 between 11:00 pm and 6:00 am, January 11, 2021 between 12:00 am and 6:00 am, January 12, 2021 between 12:00 am and 6:00 am, and January 21, 2021 between 9:00 am and 2:00 pm and confirmed that no one entered plaintiff's cell. Fraker Decl. ¶¶ 11-12. Sergeant Granfield also stated in a sworn declaration that he reviewed the AVSS footage of Facility B, Building 8, between 10:00pm and 6:00am, on December 15, 2022 and January 19, 2023 and confirmed that plaintiff's door remained secure the entire time. ECF No. 55-3 ("Granfield Decl.") at ¶ 4, 5. These assertions are sufficient to show that plaintiff has

18

not "connect[ed] … [defendant Campos] to the incident giving rise to liability;" therefore, defendants have met their initial burden. Paine, 265 F.3d at 984.

The burden then shifts to plaintiff, who must demonstrate that he has "alleged facts that show that [defendant Campos] was personally involved in the deprivation of his [Eighth Amendment] rights." Jenkins, 2012 WL 12904629, at *10. Plaintiff alleges that defendant Campos entered his cell and assaulted him on multiple dates. The undersigned addresses the sufficiency of plaintiff's FAC and deposition in raising a genuine dispute of fact with respect to each incident date below.

**January 10/11, 2021:**[5]

In plaintiff's FAC, he alleges that defendant Campos "orchestrated and conspired with prisoners" to assault him. ECF No. 14 at 3. At deposition, plaintiff stated that defendant Campos entered his cell with another correctional officer and instructed him to rape plaintiff. Plaintiff Depo. at 38:14-16. Plaintiff stated that he knew it was defendant Campos because he recognized her voice, head shape, and face. Id. at 24:17-20. In his FAC, plaintiff describes defendant Campos as a 5'7" woman with long dark hair, light brown skin, and dark undereyes—"[t]he little darkness you have when you're deficient in some kind of vitamin." ECF No. 14 at 4; Plaintiff Depo. at 48:18-23. Plaintiff's description of defendant Campos is undisputed and establishes that plaintiff could, in fact, recognize defendant Campos if he saw her. However, plaintiff fails to explain how, on this specific occasion, he was able to do so because, as he stated in his deposition, "it was pitch black" and he "could not see." Id. at 23:23-24:2. Plaintiff's assertion that he recognized defendant Campos by her voice is equally tenuous because plaintiff does not lay any foundation for the inference that he could, in fact, recognize defendant Campos' voice as he claims to have done. Absent any direct or circumstantial evidence to support his conjectures

[5] At deposition, plaintiff could not remember whether defendant Campos instructed unknown inmates to assault and rape him on January 10 or 11, 2021. Plaintiff Depo. at 25:15-21; 26:1-7; 38:10-21. Plaintiff stated that this event occurred on either January 10 or 11, 2021, but does not specify whether this account represents a single incident occurring on one or the other day or whether a distinct incident occurred on each of January 10 and 11, 2021. Accordingly, the undersigned construes the record as one event occurring on an unidentifiable day and will hereinafter refer to the incident day as "January 10/11, 2021."

19

about defendant Campos being the individual who allegedly spoke to him, plaintiff has not established a prima facie case for voice authorship and, necessarily, fails to raise a triable issue on the matter. Turner, 528 F.2d 143 at 163.

**January 12, 2021:**

Plaintiff does not mention an incident occurring on January 12, 2021 in his original complaint or FAC. Nor does he describe the details of any incident occurring on January 12, 2021 in his deposition, aside from a standalone statement that he remembers being interviewed for his grievance about unknown events allegedly occurring on January 12, 2021. Plaintiff Depo. at 22:2-6. Because plaintiff does not provide any allegations regarding the January 12 incident in his FAC or deposition, and does not otherwise meaningfully contest defendants' account of the January 12, 2021 incident, it follows that he has not raised any dispute of fact, much less a genuine dispute of material fact.

**January 17, 2021:**[6]

In his original complaint, plaintiff states that "an unknown officer came in the cell and yanked [his] penis and in their own words said that the request for relief in the lawsuit is too much." ECF No. 14 at 13. However, at deposition, plaintiff stated that defendant Campos came into his cell on January 17, 2021. Plaintiff Depo. at 24:11. Plaintiff stated that he "didn't know exactly who it was" but identified the individual as defendant Campos by her voice and body shape. Id. at 24:12, 19-20. Later in his deposition, plaintiff stated that he did not know who assaulted him on January 17, but "he was definitely a man." Id. at 44:22-45:3, 4-12. In his FAC, plaintiff also alleges that "on 1-17-21 … an *unknown* officer punched plaintiff [*sic*] head around 10 times so hard that plaintiff lossed [*sic*] consciousness." ECF No. 14 at 3-4 (emphasis added). Plaintiff's own statements work against him. Although he identifies defendant Campos as his

---

[6] Defendants do not expressly deny that defendant Campos assaulted plaintiff on January 17. However, Lieutenant Fraker's declaration that plaintiff's cell was not opened at any time on January 17 between 12:00 am and 6:00 am establishes that no one, much less defendant Campos, entered plaintiff's cell and assaulted him. This assertion is sufficient to establish that defendants have met their initial burden of proof. Accordingly, the undersigned addresses the January 17 incident with respect to whether plaintiff has, in turn, met his burden in raising a triable issue of fact.

20

January 17 assailant in the first instance, he later concedes that he does not know who assaulted him. In addition, plaintiff's assertion that his assailant was a man contradicts his own statement that he identified defendant Campos *by her voice*. The undersigned is not convinced by plaintiff's speculation and guesswork that defendant Campos entered his cell and assaulted him on January 17. In fact, it seems that plaintiff, himself, is unconvinced by his own sweeping conclusory allegations that defendant Campos entered his cell and assaulted him on January 17. "Other than his own beliefs, [p]laintiff offers no evidence to support his conclusory assertion" and, therefore, has failed to raise a triable issue of fact. Wells v. Lima, No. 1:22-cv-0205-KES-CDB (PC), 2025 WL 2829151, at *6 (E.D. Cal. Oct. 6, 2025) (finding that plaintiff's unsupported assertions insufficient to defeat summary judgment and recommending grant of summary judgment for defendant on plaintiff's Eighth Amendment deliberate indifference claim); Burch v. Regents of Univ. of California, 433 F.Supp.2d 1110, 1119 (E.D. Cal. 2006) ("Statements in declarations based on speculation or improper conclusions or argumentative statements, are not facts and likewise will not be considered on a motion for summary judgment."); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.").

**January 21, 2021:**

In his original complaint, plaintiff stated that "Defendants M. Compos [*sic*] and Moore come [*sic*] in Plaintiff's cell" and that Defendant Campos "acted like [she] grabbed [*sic*] Plaintiff's penis and popped M. Compos [*sic*] finger acting like she was going to yank Plaintiff's penis." ECF No. 1 at 13. In his FAC, plaintiff alleged that defendant Moore assaulted him on January 21 but did not mention defendant Campos. ECF No. 14 at 4. However, at deposition, plaintiff stated that defendant Campos accompanied defendant Moore when he entered plaintiff's cell and assaulted him on January 21, 2021. Plaintiff Depo. at 47:20-23. Plaintiff stated that defendant Campos punched him. Id. at 47:23-25. Plaintiff also stated that the individuals who assaulted him told him that what he was asking for in his lawsuit was too much, but he does not specifically identify who the declarant of this statement was. Id. at 48:1-4. Plaintiff does not

21

state that he saw defendant Campos, recognized her voice, or how he otherwise identified her as the individual allegedly accompanying defendant Edwards.  Aside from his one-line statement that defendant Campos participated in the assault that he otherwise alleges defendant Moore, alone, committed, plaintiff does not provide any non-speculative or tenable evidence that places defendant Campos at the January 21 incident.  In addition, plaintiff contradicts himself, stating that defendant Campos did not, in fact, touch him but only *acted* like she was going to, then later claiming that defendant Campos actually punched him.  Without any specific facts, the undersigned cannot infer and will not blindly accept the truth of plaintiff's unsupported conclusion.  Accordingly, plaintiff has failed to raise a triable issue of fact as to whether defendant Campos was one of the individuals who entered his cell and assaulted him on January 21.

**December 15, 2022:**

In his original complaint, plaintiff stated that on December 15, 2022, defendant Campos entered his cell with an unknown officer, yanked on his penis, hit his already injured shoulder, and knocked him unconscious.  ECF No. 1 at 15.  At deposition, plaintiff stated that there was an incident with Campos around that time.  Plaintiff Depo. at 68:16-20.  In his interview with Lieutenant Allen, plaintiff stated that he identified defendant Campos as his assailant by her voice.  ECF No. 55-4 ("Allen Decl.") at ¶ 3.  Plaintiff does not explain how he came to the conclusion that it was defendant Campos' voice, nor does he provide any specific facts that would otherwise allow the undersigned to infer that defendant Campos was the individual who entered plaintiff's cell and assaulted him.  Accordingly, plaintiff has not raised a triable issue as to whether defendant Campos was the culpable individual for the December 15, 2022 incident as he claims her to be.

**January 19, 2023:**

Plaintiff does not mention any incident occurring on January 19, 2023 in his original complaint, his FAC, or in his deposition.  However, in his interview with Lieutenant Allen, plaintiff stated that a second incident occurred on January 19, 2023 following the December 15, 2022.  Allen Decl. at ¶ 3.  Plaintiff did not provide any details regarding the incident, including

what happened, who did what, and what injuries he sustained.  Nor does he otherwise meaningfully contest defendants' account of the January 19, 2023 incident.  Therefore, it follows that plaintiff has not raised *any* dispute of fact, much less a *genuine* dispute of material fact.

Examining the record as a whole, the undersigned finds that plaintiff has not raised a triable issue of fact as to whether defendant Campos was the individual who entered his cell and assaulted him on January 10, 11, 12, 17, and 21, 2021 or on December 15, 2022 and January 19, 2023.  Accordingly, the undersigned recommends summary judgment be granted as to defendant Campos on plaintiff's excessive force claim.

### IV.    Whether Defendant Georgiou Shot Plaintiff

Defendant Georgiou stated in a sworn declaration that he denies using any force on May 18, 2021 and telling any inmate to attack plaintiff.  ECF No. 55-7 ("Georgiou Decl.") at 2. Defendant Georgiou stated that on May 18, 2021, he worked as the Facility A, Building 7 Control Booth Officer.  Id. at ¶ 3.  He stated that he is not able to communicate with inmates except by yelling commands or orders via the public address system.  Id.  After releasing inmates for the noon medical distribution, he observed multiple inmates attack plaintiff.  Id.  In response, he yelled at the attackers to get down and retrieved a 40 mm launcher.  Id.  The attackers ran away from plaintiff before defendant Georgiou discharged the 40 mm launcher.  Id.  He further stated that he did not make the comments, "I got your deliberate indifference right here" or "I won't shoot my friends, just you and the lawsuit, you are asking for too much."  Id. at ¶ 4.  In support, Special Agent Snyder stated in a sworn declaration that he reviewed the incident report for the May 18, 2021 incident and noted that no force was used by staff, that defendant Georgiou aimed a 40 mm launcher at the fighting inmates but did not fire.  ECF No. 55-6 ("Snyder Decl.") at ¶ 4. He also stated that no munitions were missing or expended from the 40 mm launder on May 18, 2021.  Id.  Special Agent Snyder interviewed witnesses present during the May 18, 2021 incident and reported that none observed staff utilize any force or heard a 40 mm fired.  Id. at ¶ 5.  Special Agent Snyder also interviewed Officer Barrios, one of the responders to the May 18, 2021 incident, and reported that Officer Barrios did not hear the sound of a 40 mm or defendant Georgiou say, "I got your deliberate indifference right here" or "I won't shoot my friends, just

you and the lawsuit, you're asking for too much." Id. at ¶ 6. Also in support, RN Balbasova stated in a sworn declaration that on May 18, 2021, she performed a medical assessment on plaintiff and observed laceration wounds on his hand, arm, neck, and ear. ECF No. 55-11 ("Balbasova Decl.") at ¶ 2. She did not observe any injuries to plaintiff's head. Id. After RN Balbasova concluded her assessment of plaintiff, he was transferred to UC Davis Medical Center for a higher level of care. Id. Defendants provide the medical report of injury that RN Balbasova prepared after evaluating plaintiff, which confirms his observed injuries as laceration wounds on his ear, neck, and hand and a puncture wound on his chest. ECF No. 55-11. Defendants also provide the UC Davis Medical Center report for plaintiff, which confirms that plaintiff suffered a stab wound to the neck and hand. ECF No. 55-15 at 31, 32, 38, 39. The report also stated that plaintiff's head was found atraumatic upon a physical exam. Id. at 33, 41. These assertions are sufficient to "negat[e] an essential element of [plaintiff's] claim" that defendant Georgiou used excessive force by shooting him in the head. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden then shifts to plaintiff, who must demonstrate that defendant Georgiou did shoot him or otherwise use excessive force against him. In his opposition, plaintiff argues generally that defendants did not provide the footage for the dates he requested, namely May 17, 2021, May 21, 2021, May 17, 2022, and November 20, 2022. ECF No. 60 at 2. This does not raise a triable issue of fact. Plaintiff's request for footage from the day before and days after the incident is not probative in assessing whether or not defendant Georgiou shot him during the inmate fight; therefore, it is immaterial. Plaintiff also does not explain what happened on the newly added dates of May 17, 2022 and November 20, 2022 or how they are relevant to the May 18, 2021 incident. Moreover, as previously explained, whatever transpired on the new dates is not properly alleged in the FAC and, thus, is not properly before the Court.

In addition, plaintiff argued that he was shot and a nurse cut out a bullet on May 17, 2021. ECF No. 60 at 2. Plaintiff subsequently requests the undersigned to review surveillance footage at Folsom Mercy Hospital between 1:00 pm and 8:00 pm on that day. Id. At deposition, plaintiff stated that defendant Georgiou shot him in the head, that the top of his head flapped up, and that

the bullet went into his brain.  Plaintiff Depo. at 55:19-56:13.  In his original complaint, plaintiff stated that "a man in black clothes that looked like an officer cut plaintiff's face with a box cutter and popped out the bullet in plaintiff's face like popping a pimple."  ECF No. 1 at 14.  However, these "uncorroborated and self-serving testimon[ies]" do not raise a triable issue of fact either. Gravelle v. Kiander, No. C13-1911JLR, 2016 WL 1258345, at *13 (W.D. Wash. Mar. 31, 2016) (granting summary judgment to defendants on plaintiff's Eighth Amendment deliberate indifference claim because undisputed medical evidence established that plaintiff's foot and ankle were not injured on the day of his arrest despite plaintiff alleging that defendants broke his ankle through force).  Plaintiff does not provide any detailed facts or supporting evidence to establish that defendant Georgiou shot him, or that he suffered any injury to the head at all.  Nor could he, because medical evidence establishes that plaintiff did not ever sustain one.  Plaintiff's FAC, deposition, and opposition are "blatantly contradicted by the record, so that no reasonable jury could believe it" and, accordingly, he has not met his burden of refuting summary judgment. Gravelle, 2016 WL 1258345, at *13 (quoting Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); FTC v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

Examining the record as a whole, the undersigned finds that plaintiff has not stated specific facts in his opposition, original complaint, FAC, deposition, or other verified filings that raise a genuine dispute of fact as to whether defendant Georgiou shot him.  Accordingly, the undersigned recommends summary judgment be granted as to defendant Georgiou on plaintiff's excessive force claim.  Because the undersigned finds that no constitutional violation was committed by any defendant against plaintiff, an analysis of defendants' qualified immunity argument is unnecessary.  See Cnty. of Sacramento v. Lewis, 523 U.S. 833, 842 n.5 (1998) (holding that the Court "need not discuss qualified immunity where there is no genuine dispute as

to whether defendants violated plaintiff's constitutional rights.").

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's request to e-file (ECF No. 60) is DENIED as moot in light of the recommendation to grant summary judgment to defendants.

2. Plaintiff's Ex Parte Application to Reopen Discovery (ECF No. 62) is DENIED.

3. Plaintiff's Motion for a 30-day Extension of Time to Serve Discovery (ECF No. 65) is DENIED as moot.

IT IS FURTHER RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (ECF No. 55) be GRANTED.

2. The Clerk of the Court be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 20, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

26